UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

# CASE NO.: 14-14140-C

| | |
|---|---|
| ALINA FEAS,<br><br>    Applicant/Petitioner<br><br><br>v.<br><br><br>UNITES STATES OF AMERICA,<br><br>    Respondent. | Request for Issuance of a Certificate of Appealability from the United States District Court for the Southern District of Florida.<br><br>Case No. 14-20564-Cv-Altonaga |

**REQUEST FOR ISSUANCE**
**OF A CERTIFICATE OF APPEALABILITY**

BENSON WEINTRAUB, ESQ.
FL. Bar No. 486418
Law Office of Benson Weintraub
837 Victoria Park Rd. #4
Ft. Lauderdale, FL. 33304
Email: weintraub.benson@gmail.com
Telephone: 954.464.1314

## <u>APPLICANT'S CERTIFICATE OF INTERESTED PERSONS</u>

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, Applicant, Alina Feas, certifies that the following represents a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Collado-Hudak, Adriana, associate attorney at prior law firm representing Applicant/Petitioner.

- Egleston, Scott D., prior counsel to Applicant/Petitioner.

- Feas, Alina, Applicant/Petitioner.

- Kubiliun, David M., prior counsel to Applicant/Petitioner.

- Law Office of Benson Weintraub, law firm representing Applicant/Petitioner.

- Manos, Alwine, & Kubiliun, P.L., prior law firm representing Applicant/Petitioner.

- McNamara, Anne, attorney for the United States of America.

- Weintraub, Benson B., attorney for Applicant/Petitioner.

C-1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Applicant respectfully requests oral argument concerning the issues raised herein in the event this Court should grant a Certificate of Appealability.  The issues raised herein present important questions of a Constitutional dimension and Applicant believes this Court would be aided in its deliberations by the presence of counsel before the Court to comment upon the issues and respond to inquiries from the Court.

# **TABLE OF CONTENTS**

PAGE(S)

CERTIFICATE OF INTERESTED PERSONS …………………………C-1

STATEMENT REGARDING ORAL ARGUMENT ……………………i

TABLE OF CITATIONS …………………………………………………...iv

STATEMENT OF JURISDICTION ………………………………………..1

STATEMENT OF THE ISSUES …………………………………………...1

STATEMENT OF THE CASE ……………………………………………..2

STATEMENT OF THE FACTS ………………………………………...13

STANDARD APPLICABLE TO ISSUANCE OF A

      CERTIFICATE OF APPEALABILITY …………………………...17

ARGUMENT

    I.    *A Certificate of Appealability Should Issue to Review the Failure of the District Court to Conduct an Evidentiary Hearing on Applicant's § 2255 Motion Where Applicant's Allegations of Ineffective Assistance of Counsel are Corroborated by Two Third-Party Affidavits...*19

    II.    *A Certificate of Appealability Should Issue to Review Prior Counsels Deficient Performance, Including Prior Counsels Failure to Perform Duties Mandated by Prevailing Professional Norms..………..*27

    III.    *A Certificate of Appealability Should Issue to Determine Whether the District Court Erroneously Failed to Consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and Kubiliun's Numerous Violations of Their Ethical and Professional Responsibilities...………………………………………….*36

IV.    *A Certificate of Appealability Should Issue to Determine Whether the District Court Erroneously Concluded that Messrs. Egleston and Kubiliun's Associate's Personal and Professional Relationship with Ms. Pampin, a Co-defendant in Applicant's Underlying Criminal Case, Did Not Create an Actual Conflict of Interest that Negatively Affected Applicant's Representation.*....................................39

CONCLUSION ………………………………………………….......43

CERTIFICATE OF COMPLIANCE …………………………...............44

CERTIFICATE OF SERVICE …………………………………….......44

## <u>TABLE OF CITATIONS</u>

PAGE(S)

**<u>Cases</u>**

*Aron v. United States*, 291 F.3d 708 (11th Cir. 2002) …………………….......18

*Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621 (1977).....20, 23, 27, 30, 33, 34

*Bobby v. Van Hook*, 558 U.S. 4, 130 S.Ct. 13 (2009)....................................36, 37

*Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996)........................................................31

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)........................22, 24

*Bracy v. Gramley*, 520 U.S. 899, 117 S. Ct. 1793 (1997)..................................18

*Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463 (1970)..............................35

*Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (1980)..................................40

*De La Rosa v. United States*, 2012 WL 4466533 (S.D. Fla. Aug. 17, 2012)......35

*Dickinson v. Wainwright*, 683 F.2d 348 (11th Cir. 1982)..................................20

*Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975)....................20, 22, 24, 25

*Fontaine v. United States*, 411 U.S. 213. 93 S.Ct. 1461 (1973)........23, 25, 30, 34

*Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223 (1956)......................................33

*Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366 (1985).........................................29

*Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995)......................................36, 37

*Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838 (1993).................................28

*Lloyd v. McNeil*, 2009 WL 2424576 (S.D. Fla. Aug. 5, 2009)...........................35

iv

*Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543 (1984).......................................35

*Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510 (1962)..23, 25, 30, 33, 34

*Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976).......................................................31

*Matthews v. United States*, 533 F.2d 900 (5th Cir. 1976).......................................24

*Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977)...............................................37

*Miller-El v. Cockrell,* 537 U.S. 322, 123 S. Ct. 1029 (2003)............................17, 18

*Missouri v. Frye*, 132 S. Ct. 1399 (2011)...............................................................29

*Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010).....................................35

*Potts v. Zant*, 638 F. 2d 727 (5th Cir. 1981)....................................................24, 25

*Provenzano v. Singletary*, 148 F.3d 1327 (11th Cir. 1998)....................................36

*Reynolds v. Chapman*, 253 F.3d 1337 (11th Cir. 2001)....................................39, 40

*Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971)..................................35

*Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000).....................................18

*Smith v. White*, 815 F.2d 1401 (11th Cir. 1987)................................................39, 43

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).......3, 6, 26, 28, 29, 36, 37

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984)..............................28

*United States v. McCord*, 618 F.2d 389 (5th Cir. 1980).............9, 11, 20, 22, 23, 24, 25, 27, 30

*United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979).........................................23

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994)...................................40, 42

*United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)............20, 22, 24, 25

*Vandenades v. United States*, 523 F.2d 1220 (5th Cir. 1975).........20, 22, 23, 25

*Von Moltke v. Gillies*, 332 U.S. 708, 68 S. Ct. 316 (1948)..............................32

*Walker v. Caldwell*, 476 F. 2d 213 (5th Cir. 1973)............................................32

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527 (2003)....................................31

## Federal Statutes

28 U.S.C. §2253......................................................................................1, 17, 18

28 U.S.C. § 2253(c).......................................................................................1

28 U.S.C. § 2255..........................1, 2, 19, 20, 22, 23, 24, 25, 26, 27, 30, 34, 43

## Federal Rules

Fed. R. App. P. 22.........................................................................................1

Fed. R. Crim. P. 11......................................................................................24

11th Cir. R. 22-1(b).......................................................................................1

## Other Authorities

U.S. Const. Amend. VI..................................................................2, 21, 27-28, 30

Model Rules of Prof'l Conduct R. 1.1, cmt. (1983)...........................................38

R. Regulating Fla. Bar 4-1.7, cmt....................................................................40

R. Regulating Fla. Bar 4-1.7...........................................................................40

## STATEMENT OF JURISDICTION

Federal Rule of Appellate Procedure 22 prevents Applicant, Alina Feas, from appealing the denial of her petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2255, "unless a circuit justice or a circuit or district judge issues a Certificate of Appealability ("COA") under 28 U.S.C. § 2253(c)." The District Court for the Southern District of Florida denied Applicant a COA. (DE 36, p. 9) Accordingly, this Court has jurisdiction under 28 U.S.C. §2253 and 11th Cir. R. 22-1(b).

## STATEMENT OF THE ISSUES

Applicant seeks this Court's leave to appeal the following issues:

1. Whether the District Court erroneously failed to conduct an evidentiary hearing on Applicant's §2255 Motion where Applicant's allegations of ineffective assistance of counsel are corroborated by two third-party Affidavits.

2. Whether the District Court erroneously held that the identified acts and omissions by Messrs. Egleston and Kubiliun did not constitute ineffective assistance of counsel.

3. Whether the District Court erroneously failed to consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and Kubiliun's various violations of their ethical and professional responsibilities.

4. Whether the District Court erroneously concluded that Messrs. Egleston and Kubiliun's Associate's personal and professional relationship with Ms. Pampin, a co-defendant in Applicant's underlying criminal case, did not create an actual conflict of interest that negatively affected Applicant's representation.

1

## STATEMENT OF THE CASE

On February 14, 2014, Applicant filed a Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255 with attached Memorandum of Law to support the same ("Motion"). (DE 4.) Generally, the Motion alleged that her prior counsel, Messrs. Egleston and Kubiliun, provided constitutionally defective counsel at every stage of the case and that such deficient performance ultimately forced Applicant to unconditionally accept a lopsided plea agreement and sentence despite the objections of both third parties and the Applicant herself. (DE 4, pps. 1-2.) Applicant stated that prior counsel completely failed in their duty to make a reasonable, independent investigation of the facts and law, which ultimately led to an ill-advised path of substantial assistance and cooperation that she was unable to provide. (DE 4, p. 2; DE 4, pps. 16-18.) As a result, Applicant did not make an "informed choice" as to whether to plead guilty to the extent that Applicant's choice was not "knowing and voluntary". (DE 4, pps. 12-13.)

Prior counsel also failed to disclose or to discuss any of the federal government's alleged discovery with Applicant. (DE 4, p. 3.) Additionally, Messrs. Egleston and Kubiliun failed to negotiate any of the terms in the plea agreement, asserting that the Sixth Amendment right to counsel attaches even at the plea negotiation stage. (DE 4, p. 3; DE 4, p. 12.)  Prior counsel failed to object to any of the factual inaccuracies that formed the basis of her plea and sentence and failed to

2

dispute the myriad factual inaccuracies contained within the Presentence Investigation Report despite being informed of the errors. (DE 4, p. 3; DE 4, pps. 14-16.) Applicant argued that, due to the foregoing, Messrs. Egleston and Kubiliun rendered counsel that was both deficient (falling below an objective standard of reasonableness) and prejudicial (in that Applicant would have pleaded differently but for the defective counsel) according to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). (DE 4, pps. 18-21.)

Finally, Applicant argued that Messrs. Egleston and Kubiliun operated under an actual conflict of interest due to the fact that their firm's associate, Ms. Collado-Hudak, was a close friend of Ms. Pampin, a co-defendant in the case, that Collado-Hudak provided legal counsel to Ms. Pampin, and that this actual conflict created an adverse effect on the representation of Applicant. (DE 4, p. 4; DE 4, p. 22; DE 4, p. 24.)

The government filed its Response in Opposition to Motion ("Response") on April 1, 2014. (DE 12.) The government argued, without reference to the third party affidavits filed along with the Motion, that Applicant's plea was "knowing and voluntary," citing her statements during the change of plea colloquy and the Agreed Factual Basis that she was fully advised of the consequences and nature of the plea, and summarily concluded she could not show her statements were false. (DE 12, pps. 7-8; DE 12, p. 10.) The government also stated that Applicant's

statements during the plea colloquy and Agreed Factual Basis contradict her assertions that Messrs. Egleston and Kubiliun rendered ineffective assistance of counsel to her. (DE 12, p. 10; DE 12; pps. 12-14.) The government argued that Applicant did not show that former counsel's failure to explain that she was not required to plead guilty according to a plea agreement prejudiced her case as she could not show the result would have been different otherwise. (DE 12, pps. 14-15.)

The government also summarily states that the plea agreement barred former counsel from lodging objections to the enhancements and that counsel disputed the Presentence Investigation Report ("PSI") and the abuse of trust enhancement. (DE 12, pps. 15-16.) The government characterized the argument regarding cooperation as a request for the impossible (namely, to require the government to file a Motion for Downward Departure) and suggested both that counsel adequately prepared her for the debriefing sessions and that "her purported injury is too speculative" to be considered prejudicial. (DE 12, pps. 16-17.)

Finally, the government asserted that Messrs. Egleston and Kubiliun provided counsel only to Applicant and not to Ms. Pampin and that Ms. Pampin did not retain Ms. Collado-Hudak as counsel of record for her case. (DE 12, p. 19.) The government summarily concluded that the friendship between Ms. Collado-Hudak and Ms. Pampin, along with the letter written by the former on behalf of the

4

latter, did not give rise to an actual conflict of interest. (DE 12, p. 19.) The government characterized Applicant's several, specific, and detailed assertions as "generalized allegations" contradicted by the record. (DE 12, p. 19.)

Applicant filed a Traverse with Incorporated Memorandum of Law ("Traverse") on May 1, 2014. (DE 27.) Beginning by highlighting that the Response did not contain any refutation from Messrs. Egleston or Kubiliun, the Traverse then argued that the government mischaracterized the events that took place with regards to the Agreed Factual Basis. (DE 27, p. 3.)

The fact that Applicant had no opportunity to review and discuss the document with her attorneys, which formed the basis for the application of the Guidelines at sentencing, necessitates an evidentiary hearing. (DE 27, p. 3.) Applicant also argued in the Traverse that, contrary to the government's mischaracterizations, Applicant argued Messrs. Egleston and Kubiliun failed utterly in discharging their constitutional obligation during the cooperation stage by failing to, among other things, failing to advise Applicant on the possibility of obtaining a proffer agreement and failing to review discovery with her before debriefing (or at any point), supported by an affidavit from Professor Douglas Berman. (DE 27, pps. 5-8.)

Citing to expert affidavits and a third party affidavit, Applicant argued that these failures culminated in the lopsided plea agreement and that the "discharge of

ministerial duties" by Messrs. Egleston and Kubiliun did not amount to any meaningful assistance of counsel. (DE 27, pps. 8-9.) Applicant then re-iterated the close personal relationship between Ms. Collado-Hudak and Ms. Pampin as well as the critical role Ms. Collado-Hudak played during the initial meeting with Applicant to argue that there was a presence of an actual conflict of interest that should be imputed to the firm. (DE 27, pps. 9-14.) Citing to both the letter by Ms. Collado-Hudak on behalf of Ms. Pampin and the affidavits of third parties, Applicant argued that there existed an attorney-client relationship between Ms. Collado-Hudak and Ms. Pampin despite there being no formal in-court representation from the former of the latter. (DE 27, pps. 10-14.) Finally, Applicant re-emphasized former counsel's failures, discussed *supra*, to highlight the adverse effect created by the conflict(DE 27, pps. 14-16.)

Applicant highlighted the disparate terms between the plea agreements of herself and the other co-defendants in the case, emphasizing the application of the abuse of trust enhancement to Applicant and the Applicant having pled to a multiple counts as opposed to just one. (DE 27, pps. 15-16.) Applicant concluded by stating that she is entitled to an evidentiary hearing on her Motion as she has satisfied the *Strickland* standard. (DE 27, pps. 16-17.)

On June 9, 2014, the Magistrate Judge issued a Report and Recommendation ("Report") that Applicant's Motion be denied. (DE 29.) The Magistrate, *without*

6

*referring to either of the third party affidavits filed in support of the Motion*, refused to consider Applicant's allegations that she did not have the opportunity to review the Agreed Factual Basis and that she did not agree with the terms of the plea agreement, as they contradicted Applicant's earlier statements during the plea colloquy, and as such, was not entitled to an evidentiary hearing. (DE 29, pps. 7-8; DE 29, pps. 11-12; DE 29, pps. 19-20.) Additionally, the Magistrate concludes that the expert affidavits filed in support of Applicant's Traverse "are not helpful to the Court," stating that the issue of whether counsel provided ineffective assistance is question of law not suited to expert testimony. (DE 29, pps. 21, 23-24.)

The Magistrate criticizes Applicants' arguments by stating they are inconsistent in that she allegedly simultaneously argued that counsel failed to prepare her so that she would qualify for substantial assistance and that counsel knew she had no information that would rise to the level of substantial assistance. (DE 29; pps. 26-27.)

Additionally, citing to non-binding precedent and without referring to the third party affidavits, the Magistrate again stated that Applicant's statements during the change of plea hearing expressing satisfaction with the performance of counsel proved conclusive. (DE 29; pps. 27-29.) Again, by citing to non-binding precedent and without referring to the third party affidavits, the Magistrate claimed in his Report that Applicant's argument regarding the negotiation of the plea

7

agreement terms or immunity fails because they are "matters strictly within the prosecutor's discretion", stating that her argument is "conclusory, speculative and unsupported by the record." (DE 29; pps. 30-32.)

The Magistrate Judge, again citing to non-binding precedent and without referring to the third party affidavits, concluded that Applicant's claim regarding pleading guilty without a plea agreement could not prevail as she did not show that the sentence would have been different or that "she would have proceeded to trial." (DE 29; pps. 32-33.)

The Magistrate then dismissed the arguments regarding the change of plea hearing by stating the Applicant cannot contradict her earlier statements made during the change of plea hearing itself by saying they were not knowing and voluntary due to her former counsel's misleading advice. (DE 29; p. 35, 37.) Without mentioning the existence of either of the third party affidavits produced in support of Applicant's Motion, the Magistrate states, "[t]he petitioner has not presented any evidence, other than her self-serving declaration, that her statements were involuntary." (DE 29; p. 36.) Once again citing to non-binding precedent, the Magistrate concluded in his Report that Applicant's complaints regarding admitting to elements of the sentence at the change of plea hearing were without merit as they were the terms of her plea agreement. (DE 29; pps. 36-37.)

8

On July 9, 2014, Applicant filed her Objections to Report and Recommendation of Magistrate Judge ("Objections"). (DE 33.) The Objections centered on the argument that Applicant had produced more than enough evidence in the form of credible third party affidavits that state detailed factual allegations to warrant an evidentiary hearing. (DE 33, p. 1, 3.)

The Objections relied upon a series of binding cases, such as *United States v. McCord*, 618 F.2d 389 (5th Cir. 1980), for the proposition that a defendant's statements during a change of plea hearing do not create an absolute bar in the evaluation of ineffective assistance claims and that reliable, detailed third party affidavits create enough factual disputes as to require an evidentiary hearing. (DE 33, p. 4-7.) The Objections distinguish the case law cited in the Magistrate's Report by their facts, stating they are not applicable to the case at bar. (DE 33, p. 7-9.)

Applicant also emphasized in her Objections that statements made during change of plea hearing are not invulnerable to subsequent attack and that those statements could not have been made knowingly and voluntarily if made on reliance of constitutionally defective counsel. (DE 33, p. 10.) Specific factual allegations corroborated by third parties entitle Applicant to an evidentiary hearing, and the case law cited by the Magistrate neglected to take that rule of law into account. (DE 33, p. 11-14.)

9

Secondly, the Applicant asserted in her Objections that issues regarding counsel's duties, as opposed to strategic choices, are open to expert testimony, and that expert testimony is necessary to shed light on the myriad ways in which former counsel failed in the discharge of their professional duties (DE 33, p. 16-17.) With regards to the conflict of interest issue, Applicant first asserted in her Objections that a lawyer's relationship to a non-client third person could create a conflict of interest and that such a conflict is still imputable to the entire firm. (DE 33, p. 18-19.) Applicant then goes on to describe the letter written by Ms. Collado-Hudak on behalf of Ms. Pampin that explains how the former discussed the legal consequences of the case with the latter. (DE 33, p. 19; DE 434, pps. 4-5.) Applicant finally asserts that former counsel failed to investigate any of the facts regarding the case, that having done so would have constituted a reasonable alternative strategy, and that this failure occurred because of the divided loyalties created by Ms. Collado-Hudak's close personal friendship with Ms. Pampin. (DE 33, p. 20.)

On July 28, 2014, the government filed its Response in Opposition to Applicant's Objections ("Response to Objections"). (DE 35.) The government begins its arguments by stating that the "Expert Testimony" section of the Objections does not controvert the Magistrate's finding that the expert affidavits are "not helpful to the Court" and that Applicant did not request that the two expert

10

affidavits be used at an evidentiary hearing. (DE 35, pps. 5-6.) The government criticizes Applicant's "indirect" request for an evidentiary hearing. (DE 35, p. 6.) The government then reiterates the Magistrate's position that Applicant's assertions are contradicted by the record. (DE 35, p. 7.)

The government remarks that the Magistrate referred to the two third party affidavits fifteen times over the course of his forty-nine page Report without mentioning the context behind those references, using these references as a point to attempt to distinguish *McCord*. (DE 35, p. 7-8.)

The government then proceeds to focus solely to attempt to distinguish *McCord* to the near exclusion of any of the other cases cited in the Objections. (DE 35, p. 7-9.) The government summarily and conclusory reasons *McCord* is distinguishable from the instant case because *McCord* featured the affidavits of FBI agents as opposed to the affidavits of the Applicant's son and friend and that *McCord* featured the issue of an unkept guilty plea as opposed to ineffective assistance of counsel. (DE 35, p. 8-9.) The government then repeats the Magistrate's speculation regarding what might have occurred had Applicant pleaded guilty to the indictment. (DE 35, p. 9.)

In support of its claim that Messrs. Egleston and Kubiliun did not render ineffective assistance and had taken "numerous actions" and meetings with regards to the case, the government cites to one paragraph in one affidavit. (DE 35, p. 10.)

11

Additionally, the government cites to the statements of Mr. Egleston himself during the change of plea hearing as evidence that he and Mr. Kubiliun rendered sufficient counsel and again insists that the record contradicts Applicant's allegations. (DE 35, p. 10.)

In attempting to refute Applicant's assertion that statements during change of plea hearings are not invulnerable to subsequent attack, the government summarily states that the Magistrate "correctly found" that Applicant's allegations were "too vague and conclusory", "inconsistent", and "contradictory." (DE 35, p. 12.) The government then states that Applicant did not argue that she would have gone to trial had it not been for the ineffective counsel. (DE 35, p. 12.)

Finally, the government concludes by stating there is no actual conflict of interest in the case because no relationship exists between Messrs. Egleston and Kubiliun on the one hand and Ms. Pampin on the other. (DE 35, p. 13-14.) The government also states that any adverse effect alleged by Applicant in the Objections is conclusory as, according to the government, there exists no evidence stating that Messrs. Egleston and Kubiliun were defective in their representation as a result of a loyalty to Ms. Pampin. (DE 35, p. 14-15.)

On August 12, 2014, the District Judge entered a nine page order denying Applicant's Motion. (DE 36.) After nearly eight pages summarizing the arguments and findings of the Magistrate, Applicant, and the government, the Judge orders

that the Motion be denied. (DE 35, p. 8-9.) The Judge summarily concludes that Applicant's allegations, taken together with the allegations made by the third party affidavits, "do not rise to the level of 'credible documentary evidence which indicates a right to relief." (DE 36, p. 8.)(internal quotations omitted) The Judge further states summarily that Applicant did not attack her conviction and sentence "on the basis of an unkept plea bargain" and that the third party affidavits do not demonstrate that Messrs. Egleston and Kubiliun "improperly exerted pressure on defendant, misrepresented material facts, and withheld information in order to induce a plea of guilty." (DE 36, p. 9.) Finally, the Judge concludes by summarily stating that none of Applicant's corroborated allegations show that prejudice occurred as a result of Messrs. Egleston and Kubiliun's counsel. (DE 36, p. 9.)

## STATEMENT OF THE FACTS

A federal prosecutor and a federal agent arrived at Applicant's residence on January 15, 2013 at approximately 7 a.m. to ask about her work for Health Care Solutions Network, Inc. ("HCSN"). (DE 4-2, ¶ 4; DE 32-1, ¶ 4.) Jerry Feas, a third party, was present throughout the interview. (DE 4-2, ¶ 5; DE 32-1, ¶ 5.) Despite being questioned for about four hours, Applicant was not informed of her *Miranda* rights at any point. (DE 4-2, ¶ 5; DE 32-1, ¶ 5.)

At one point during the questioning, the federal prosecutor showed Applicant and the third party a file with signatures purported to be of the Applicant

13

herself; the third party recognized that the signatures shown were forged. (DE 4-2, ¶ 8; DE 32-1, ¶ 8.) Applicant asked the federal officials to leave her home and then decided to seek the assistance of counsel. (DE 4-1, ¶ 18-19; DE 32-1, ¶ 18-19.)

Gema Pampin ("Pampin"), a co-defendant in the underlying criminal case styled: *U.S. v. Gonzalez, et. al.*, Case No. 12-20291-CR, referred Applicant to her close friend[1], Adriana Collado-Hudak, an associate at the law firm of Manos, Alwine, & Kubiliun, P.L. (DE 4-2, ¶ 15; DE 32-1, ¶ 15; DE 434-1 pps. 4-5.) On January 15, 2013, Applicant scheduled a meeting with Ms. Collado-Hudak and Scott Egleston, another attorney at Manos, Alwine, & Kubiliun, P.L., to discuss Applicant's earlier encounter with the federal officials and the possibility of representation. (DE 4-2, ¶ 18; DE 32-1, ¶ 18.)

Lissette Gonzalez, another third party, was present during this meeting. (DE 4-3, ¶ 6; DE 4-2, ¶ 18; DE 32-1, ¶ 18). Despite advising Applicant that she could not represent her as she was "too close to and emotionally involved in the case," Ms. Collado-Hudak participated throughout the entire meeting and became privy to confidential information regarding Applicant's case. (DE 4-2, ¶ 21; DE 32-1, ¶ 21.) Additionally, Ms. Collado-Hudak incorrectly advised that the federal government

---

[1]     On March 22, 2013, Ms. Collado-Hudak wrote a letter to the Court on behalf of Ms. Pampin. In this letter, Ms. Collado-Hudak explains that she and Ms. Pampin have been close friends since high school and that she considers Ms. Pampin "a sister." *U. S. v. Gonzalez, et. al.*, Case No. 12-20291-CR (DE 434-1, pps. 4-5.)

14

"was not required to disclose the discovery in a federal case." (DE 4-2, ¶ 22; DE 32-1, ¶ 22.)

During the meeting, Mr. Egleston proposed hiring a handwriting expert to investigate the possibility of forged signatures, hiring a private investigator, and arranging for Applicant to sit for a polygraph examination; none of these tasks were ultimately ever carried out. (DE 4-2, ¶ 23; DE 32-1, ¶ 23.) As early as this initial meeting, Mr. Egleston advised that Applicant's case would be "extremely difficult" to win at trial, only stating that there would be a huge but ultimately unnamed number of witnesses testifying against her. (DE 4-3, ¶ 12.) Despite stating as early as the first meeting that the government had "all the evidence" and "all the notes that she signed," Mr. Egleston never showed Applicant any of the alleged signed notes or any other alleged evidence in the government's possession. (DE 4-3, ¶ 12-13.)

On January 29, 2013, the date before Applicant was arrested, another attorney representing Applicant named David Kubiliun, explained that the outlook on the case was dire: the government would prepare "seven or eight witnesses" who would testify against the Applicant should she go to trial and that the best result would be to accept a plea agreement in which she would be sentenced "between 3 to 7 years in prison." (DE 32-1, ¶ 30.)  Despite asserting that the Applicant had a "99% chance" of losing at trial, neither Messrs. Egleston nor

15

Kubiliun ever showed Applicant any alleged evidence or attempted to ascertain potential witness testimony. (DE 4-3, ¶ 15.)

Neither Messrs. Egleston nor Kubiliun made *any* attempts to negotiate the terms of the plea agreement before Applicant signed it. (DE 4-3, ¶ 15.) Upon being advised that Applicant objected to several terms in the plea agreement (for example, that the amount of intended loss was $56 million, that the offense conduct involved "sophisticated means", that she was a manager or supervisor in a criminal activity that involved five or more participants), Messrs. Egleston and Kubiliun ***inaccurately told the Applicant and present third parties that nothing could be done about those terms and "that's the way it is."*** (DE 4-1, ¶ 65-69; DE 32-1, ¶ 31; DE 4-3, ¶ 14; DE 468, pps. 7-9.)(emphasis added).

On May 7, 2013, only minutes before her change of plea hearing, Applicant was shown the "Agreed Factual Basis for Plea" for the first time. (DE 4-1, ¶ 63; DE 467.) Mr. Kubiliun urged Applicant to sign the document without explaining to her the significance of the document or giving her the opportunity to examine its contents. (DE 4-1, ¶ 61.)  On the misguided advice of counsel, Applicant signed the document.  *Id.*

Messrs. Egleston and Kubiliun failed to prepare Applicant for her debriefing sessions with the federal government.  (DE 4-1, ¶ 39.) Applicant was never informed of the possibility of entering into a proffer agreement or obtaining

16

immunity for her statements during the debriefing sessions, thus opening the door for the use of the statements against her. (DE 4-1, ¶ 40, 42 & 43.)

In the interim, Applicant was sentenced.

On August 19, 2013, Applicant began to pressure Messrs. Egleston and Kubiliun to turn over the entire discovery in her case. (DE 4-3, ¶ 22.) Despite repeated attempts by Applicant and others to prod the attorneys for her file, Messrs. Egleston and Kubiliun remained unresponsive for well over a month. (DE 4-3, ¶ 22.) Finally, Messrs. Egleston and Kubiliun turned over to Applicant what they had – a lone CD containing incomplete compilation of documents. (DE 4-3, ¶ 22.)[2]

Thereafter, Applicant obtained post-conviction counsel.

## STANDARD APPLICABLE TO
## ISSUANCE OF A CERTIFICATE OF APPEALABILITY

To show that a COA should issue under 28 U.S.C. §2253, an applicant need only make a substantial showing that jurists of reason could disagree with the district court's resolution of her constitutional claims. *See, Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029 (2003). A COA should be granted where the case presents procedural or constitutional issues that one or more reasonable jurists

---

[2]     The federal government's responses to the Standing Discovery Order, filed on February 14, 2013 and April 5, 2013 respectively, identify over 300 boxes and several hard drives worth of alleged documents/evidence in its possession. *Gonzalez*, Case No. 12-20291-CR (DE 351).

would find debatable, even if nearly every judge would agree with the district court's decision.  28 U.S.C. § 2253.  The Supreme Court has explained that a court "should not decline the application for a COA merely because it believes that the applicant will not demonstrate entitlement to relief." *Miller-El,* 537 U.S. at 337. "[A] claim can be debatable even though every jurist of reason might agree, ***after the COA has been granted and the case has received full consideration***, that petitioner will not prevail."  *Id*. at 338 (Emphasis added).

Because procedural errors such as those challenged herein affect the content of the record, courts look to the statement of the claim, rather than proof of it, to determine if there is room for debate on whether relief could ultimately be granted. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000[3]); *Aron v. U.S.*, 291 F. 3d 708, 715, n. 6 (11th Cir. 2002) (petitioner must "allege – not prove – reasonably specific non-conclusory facts that, if true, would entitle him to relief"). As discussed *infra,* the record shows that a COA should issue as to Applicant's claims.

---

[3]     *See Bracy v. Gramley*, 520 U.S. 899, 908-09, 117 S. Ct. 1793, 1799 (1997) ("[W]here specific allegations before the court show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.")

## ARGUMENT

**I.     *A Certificate of Appealability Should Issue to Review the Failure of the District Court to Conduct an Evidentiary Hearing on Applicant's § 2255 Motion Where Applicant's Allegations of Ineffective Assistance of Counsel are Corroborated by Two Third-Party Affidavits.***

The issues in this case are not similar to those cases where a district court can simply review a cold record and see there was no prejudice.  At a minimum, reasonable jurists could disagree whether Applicant's § 2255 Motion should have been summarily denied without an evidentiary hearing where two third-party Affiants, describe repeated instances of constitutionally defective representation by Applicant's prior counsel with specificity.

After fully briefing Applicant's § 2255 Motion and asserting Objections to the Magistrate's Report and Recommendation (DE 33), on August 12, 2014, the District Court concluded that Applicant "… has failed to carry her burden to demonstrate ineffective assistance of counsel or establish the need for an evidentiary hearing."  (DE No. 36, p. 8)  As support for its conclusion, the District Court states:

> "There is no need for an evidentiary hearing because the allegations and affidavits provided by [the Applicant] do not demonstrate she was prejudiced by her counsels' performance."

*Id.* at 9.

A review of the applicable case law demonstrates the erroneous ruling rendered by the District Court.  In considering an Applicant's ineffective assistance

19

of counsel claim, the court is required to grant a hearing "unless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255.

The aforementioned exception is to be considered only in limited circumstances. *See, Dugan v. U.S.*, 521 F.2d 231, 233 (5th Cir. 1975). Although a petitioner's statements during a plea or sentencing hearing carry significant weight in the evaluation of ineffective assistance claims, "the barrier of the plea or sentencing proceeding record […] is not invariably insurmountable." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977).

A petitioner who brings forth her ineffective assistance claim with "specific factual allegations supported by the affidavit of a reliable third person" is entitled to an evidentiary hearing. *U.S. v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) (citing *Blackledge*, 431 U.S. at 63); *see also, U.S. v. McCord*, 618 F.2d 389, 394 (5th Cir. 1980), *Vandenades v. U.S.*, 523 F.2d 1220, 1223 (5th Cir. 1975).`

In this case, Applicant's factual allegations are backed by the Affidavits of two other witnesses, Mr. Feas and Dr. Gonzalez, who were present throughout most of Applicant's conversations with her prior counsel.  As discussed below, these two Affidavits do not simply state "speculative and inconcrete claims," *Dickinson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982); they provide several poignant examples where Messrs. Egleston and Kubiliun were plainly derelict in

their Sixth Amendment duties at nearly every phase of the case. The Affidavits

recite, with specificity, repeated instances of constitutionally defective

representation. For example,

(1) Messrs. Egleston and Kubiliun failed to provide Applicant with sufficient information to participate intelligently in the case, to keep Applicant informed about the status of the case and to promptly comply with reasonable requests for information (DE. 4-2, ¶ 34, 32-1, ¶ 34 & 4-3 ¶15 & 22);

(2) Messrs. Egleston and Kubiliun's associate, Ms. Collado-Hudak, told Applicant "… that the [G]overnment was **not** required to disclose the discovery in a federal case"[4] (DE 4-2, ¶ 22, 32-1, ¶ 22 & 4-3 ¶10);

(3) Messrs. Egleston and Kubiliun failed to disclose to Applicant any discovery documents that were either turned over to them by the Government or made available to them by the Government for review[5] (DE 32-1, ¶ 29 & 4-3, ¶12);

(4) Messrs. Egleston and Kubiliun failed to follow up on hiring a handwriting expert to investigate the possibility of forged signatures (DE 4-2, ¶ 23 & 32-1, ¶ 23);

(5) Mr. Egleston misrepresented to Applicant that there was nothing that could be done about the inaccurate information contained in the plea agreement or its lopsided terms (DE 4-2, ¶ 14, 32-1 ¶ 14 & 31 & 4-3, ¶ 14 & 15);

---

[4]    As evidenced by the Docket Sheet in *U.S. v. Feas, et al.*, Case No. 12-20291-Cr-Altonaga, on February 14, 2013 the Government filed its Response to the Standing Discovery Order (DE 351) and on April 5, 2013, the Government filed its Second Response to the Standing Discovery Order with the Court identifying, among other things, **over 300 boxes of alleged documents/evidence the Government had in its possession**. Former counsel plainly did not review or even attempt to review such voluminous records.

[5]    *See,* n. 4.

(6) Mr. Egleston misrepresented to Applicant that there was nothing that could be done about the inaccurate information contained in the PSI (DE 2 ¶ 20);

(7) Messrs. Egleston and Kubiliun failed to retain a private investigator to explore the facts surrounding the case and develop possible defenses (DE 4-2, ¶ 23, 32-1, ¶ 23 & 4-3, ¶16); and

(8) Mr. Egleston failed to prepare witnesses before the sentencing hearing (DE 4-2, ¶ 36, 32-1, ¶ 36, & 4-3, ¶19).

As discussed *supra*, said third-party Affidavits provide enough corroboration and create more than sufficient *bona fide* factual disputes to warrant, at a minimum, an evidentiary hearing. Accordingly, given the sheer amount of corroborated allegations of constitutionally defective counsel, Applicant is entitled to an evidentiary hearing on her § 2255 Motion.[6]

Several of the facts of this case are similar to the facts of *U.S. v. McCord*, 618 F.2d 389 (5th Cir. 1980).[7] In *McCord*, the district court denied petitioner's § 2255 motion without granting an evidentiary hearing, finding that the petitioner's

---

[6]    *See U.S. v. McCord*, 618 F.2d 389 (5th Cir. 1980); *Dugan v. U.S.,* 521 F.2d 231, 233 (5th Cir. 1975) ("[w]hen the petitioner presents affidavits from third parties, the danger of repeated hearings no longer exists."); *Vandenades v. U.S.,* 523 F.2d 1220, 1223 (5th Cir. 1975) ("when the record discloses other credible documentary evidence which indicates a right to relief, an evidentiary hearing may be necessary."); *U.S. v. Sanderson,* 595 F.2d 1021, 1021 (5th Cir. 1979) ("where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to an evidentiary hearing on his allegations.")

[7]    The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), *en banc*, adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

allegations contradicted his testimony during the change of plea hearing. *Id.* at 392.

The petitioner appealed, and the Fifth Circuit held that petitioner's allegations of an unkept plea bargain, although contradicted by his testimony at the sentencing hearing, were not without support, since an affidavit filed by a third party, with "… firsthand knowledge of the plea bargain, when considered in light of petitioner's motion, the files, and the record, raised a sufficient inference of an unkept plea bargain to warrant an evidentiary hearing under the express provisions of § 2255." *Id.* at 393. The Fifth Circuit stated:

> The Supreme Court has refused to apply a per se rule rendering guilty pleas invulnerable to subsequent challenge even when a § 2255 petitioner repudiates statements made to the sentencing judge at the time the plea was entered. *Fontaine v. U.S.*, 411 U.S. 213 (1973); *Vandenades v. U.S.*, 523 F.2d 1220 (5th Cir. 1975)
>
> …
>
> As the Court stated in *Blackledge*: In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstandings, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment. 431 U.S. at 75. See *Fontaine v. U.S.* 411 U.S. at 214-15; *Machibroda v. U.S.* 368 AT 491-96; *U.S. v. Nuckols*, 606 F.2d 566 (5th Cir. 1979); *Dungan v. U.S.*, 521 F.2d 231 (5th Cir. 1975).

*Id.* at 392-93. Neither the Magistrate Judge's Report and Recommendation nor the district court's order adopting said Report and Recommendation mentioned the affidavit filed by the third party in support of petitioner's motion. *Id.* at 394. The

23

appellate court noted that, not only did the district court ignore the third party's affidavit, the magistrate's report and recommendation:

> "… is conspicuously silent with respect to *Dugan* and later **cases that compel an evidentiary hearing when a petitioner's allegations are supported by credible affidavits of reliable third parties."** *See e.g. U.S. v. Sanderson,* 595 F.2d 1021 (5th Cir. 1979); *Matthews v. U.S.,* 533 F.2d 900 (5th Cir. 1976); *Vendenades v. U.S.,* 523 F.2d 1220 (5th Cir. 1975); *Dugan v. U.S.,* 521 F.2d at 233.

*Id.* (emphasis added.)[8]  While the appellate court advanced no opinion as to the merits of petitioner's motion, it held "that [petitioner] is entitled to an opportunity to present further testimonial or documentary evidence in support of his contentions." *Id.*

In rendering its decision in *Potts v. Zant*, 638 F. 2d 727 (5th Cir. 1981)[9] the Fifth Circuit supported its holding, that the district court should have granted an evidentiary hearing, by looking at an analogous situation - where a federal prisoner attempts to attack a guilty plea in a § 2255 motion filed with the same judge who took the guilty plea after following the procedure of Fed. R. Crim. P. 11.  The court

---

[8]    Like the report and recommendation in *McCord*, the Magistrate's Report and Recommendation on Applicant's Motion "is conspicuously silent" with respect to cases "that compel an evidentiary hearing when a petitioner's allegations are supported by credible affidavits of reliable third parties." *See e.g. U.S. v. McCord*, 618 F.2d 389 (5th Cir. 1980); *U.S. v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979); *Matthews v. U.S.,* 533 F.2d 900 (5th Cir. 1976); *Vendenades v. U.S.,* 523 F.2d 1220 (5th Cir. 1975); *Dugan v. U.S.*, 521 F.2d at 233.

[9]    The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), *en banc*, adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

noted:

> In the context of a § 2255 motion attacking a guilty plea, we have held that ordinarily a defendant will not be heard to refute testimony given under oath when pleading guilty. *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979). Nevertheless, in this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations regarding alleged circumstances which may go to the voluntariness of his plea, the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief. *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *United States v. McCord*, 618 F.2d 389 (5th Cir. 1980); *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979); *Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975); cf. *McKenzie v. Wainwright,* 632 F.2d 649 (5th Cir., 1980) and *Bryan v. United States*, 492 F.2d 775 (5th Cir.), cert. denied 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). ***Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing.*** *United States v. McCord, supra; United States v. Sanderson, supra; Dugan v. United States, supra*.

*Potts,* 638 F.2d at 750-51 (Emphasis added.)

According to the District Court, the cases cited by the Applicant, *McCord, Sanderson, Vandenades* and *Dugan*, are inapplicable because the affidavits involved in those case, "… identified discrete facts that, if true, would indicate a right to relief." (DE No. 36, p. 9) Contrary to the District Court's finding, and as discussed *supra*, the record is replete with numerous corroborated allegations supporting Applicant's Motion "… that, if true, would indicate a right to relief." Applicant's Motion (DE 1), Memorandum of Law in Support of Motion to Vacate (DE No. 4), Sworn Declaration (DE 4-1), Affidavit of Jerry Feas (DE 4-2; 32-1),

25

Affidavit of Lissette Gonzalez (DE 4-3), Traverse with Incorporated Memorandum of Law (DE 27) and Objections to Report and Recommendation of Magistrate Judge (DE 33), identify numerous errors and failures by Messrs. Egleston and Kubiliun, including, failing to provide Applicant with sufficient information to participate intelligently in her case, failing to keep Applicant informed, failing to review and/or discuss any evidence made available by the Government (by making the assertion "that the [G]overnment was **not** required to disclose the discovery in a federal case"),[10] making material misrepresentations on which Applicant relied on, failing to conduct an independent investigation and allowing the District Court to render rulings based on incorrect and/or misleading information.

Accordingly, Messrs. Egleston and Kubiliun's errors and failures were sufficiently prejudicial to warrant an evidentiary hearing. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Furthermore, Applicant has alleged matters that cannot be resolved by reviewing the record - the statements made by the Applicant during her change of plea hearing do not address all of the allegations made in Applicant's § 2255 Motion or by the third-party Affiants. Accordingly, an evidentiary hearing will be necessary if they are to be substantiated or refuted. *See*, *Sanders*, *supra* (holding that the petitioner was entitled to a hearing since he alleged matters outside the

---

[10]     *See,* n. 4.

26

record as a review of the record did not conclusively show his allegations to be groundless).

Simply stated, the Magistrate and District Judge reached the erroneous conclusion that an evidentiary hearing was <u>not</u> warranted by: (1) determining that guilty pleas are invulnerable to subsequent challenges when a petitioner alleges that the plea and his representations at the time of the plea are a result of such factors as misunderstandings, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment, in violation of the Supreme Court's decision in *Blackledge*; (2) ignoring and/or overlooking the allegations made in the Affidavits of third parties – Mr. Feas and Dr. Gonzalez - with firsthand knowledge of Messrs. Egleston and Kubiliun's constitutionally defective representation, *see, McCord, supra;*  and (3) failing to make a determination as to the credibility and reliability of two third-party Affidavits, in violation of binding precedent. *See, McCord*, *supra*.

Accordingly, reasonable jurists could disagree whether Applicant's § 2255 Motion should have been summarily denied without an evidentiary hearing.

## II.    *A Certificate of Appealability Should Issue to Review Prior Counsels Deficient Performance, Including Prior Counsels Failure to Perform Duties Mandated by Prevailing Professional Norms.*

It is axiomatic that the United States Constitution guarantees a defendant in a criminal prosecution the right to effective assistance of counsel.  U.S. Const.

27

Amend. VI. The fundamental right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive due process of law in an adversarial system of justice. *See, U.S. v. Cronic,* 466 U.S. 648, 658, 104 S. Ct. 2039, 2047 (1984); *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S. Ct. 838, 842 (1993).

The Supreme Court has held that "[t]he benchmark of judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). Under the *Strickland* standard, ineffective assistance of counsel is established when the defendant shows that (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defendant enough to deprive her of due process under the law. *Id.* at 687.

A defendant making a claim of ineffective assistance must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* In turn, a court deciding a claim of ineffective assistance of counsel must then judge the reasonableness of counsel's challenged conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

28

> The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Id.*

To establish *Strickland* prejudice in the context of plea negotiations, a defendant must show that the outcome of the plea process would have been different with competent advice. *See*, *Missouri v. Frye*, 132 S. Ct. 1399 (2011) (noting that *Strickland*'s inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different.'"); *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 371 (1985) ("The … 'prejudice,' requirement … focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process").

Without conducting an analysis of Applicant's claims of ineffective assistance of counsel, separate and apart from the Magistrate's, the District Court held that: "… Judge O'Sullivan correctly concluded, [Applicant] has failed to carry her burden to establish ineffective assistance of counsel under a theory of deficient performance …." (DE 36, p.9)    The District Court made a series of findings on disputed issues of fact that should have awaited an evidentiary hearing, and further erroneously concluded/and or stated that:

29

(1) Applicant is challenging the constitutional effectiveness of the assistance she received from her prior counsel, Messrs. Egleston and Kubiliun, in deciding to plead guilty.   But for prior counsel's complete and utter failure in familiarizing themselves with the facts and law, Applicant was denied her constitutional right to make an informed decision regarding entering a plea;

(2) Guilty pleas are not invulnerable to subsequent challenge even when a § 2255 petitioner repudiates statements made to the sentencing judge at the time the plea was entered.  *See, McCord, supra; Blackledge, supra; Machibroda, infra; Fontaine, supra*;[11]

(3) The Applicant has presented corroborating evidence, other than her sworn declaration. The affidavits of Mr. Feas and Dr. Gonzalez, as discussed *supra*, recite, with specificity, several repeated instances of constitutionally defective representation.[12] (DE 4-2, 4-3 & 32);

(4) Applicant has not alleged that she was entitled to a Section 5.K.1.1 motion and that the Government declined to file said motion. Applicant has filed a Motion to Vacate not a refusal to file motion. (DE 29, p. 27).

(5) It is irrelevant that "the plea agreement conferred upon the [Applicant] the benefit of pleading guilty to two counts of the indictment and the remaining counts would be dismissed on a motion by the government after sentencing."  (DE 29, p. 33)  To state that "[w]ithout the plea agreement, the [applicant] would have pled guilty to all five counts in the indictment" is speculative.  *Id.*

The case law is clear: "***If the advice of counsel falls below the minimum***

***required by the Sixth Amendment, the guilty plea cannot have been made***

---

[11]    The Magistrate states that "[t]he petitioner cannot disavow the sworn statements she made under oath to this Court by now claiming that she was just following counsels' erroneous advice."  (DE 29, p. 35)

[12]    The Magistrate states that: "[t]he petitioner has not presented any evidence, other than her self-serving declaration, that her statements were involuntary."  (DE 29, p. 36)

***knowingly and voluntarily because it would not represent an informed waiver of the defendant's constitutional rights***." *Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976) (Emphasis added.)  Applicant alleges that her plea was not a free and willing choice.  In other words, Applicant is challenging the constitutional effectiveness of the assistance she received from her prior counsel, Messrs. Egleston and Kubiliun, in deciding to plead guilty.  Messrs. Egleston and Kubiliun failed to provide Applicant with sufficient information to participate intelligently in the case by, among other things, not familiarizing themselves with the facts and/or law, by misrepresenting that they did not have access to documents and/or evidence turned over by the Government or made available to them by the Government for review,[13] by pressuring Applicant to plead guilty, and by pressuring her to enter into a plea agreement which required Applicant to provide substantial assistance to the Government knowing that Applicant could not provide any degree of meaningful cooperation, no less substantial assistance to the Government.[14]

---

[13]    *See,* n. 4.

[14]    *See, Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996)("… an accused is entitled to rely upon [her] counsel to make independent examination of facts, circumstances, pleadings and laws, involved and then to offer his informed opinion as to what plea should be entered"); *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527 (2003)("In assessing the reasonableness of any attorney's investigation, … a court must consider not only the quantum of evidence already known to counsel,

31

In other words, counsel must provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.

To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client. *See, Walker v. Caldwell*, 476 F. 2d 213, 217 (5th Cir. 1973) citing, *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S. Ct. 316, 322 (1948).

Due to Messrs. Egleston and Kubiliun's various misrepresentations, misleading counsel and failure to make an independent examination of facts, circumstances, pleadings and laws involved in the underlying criminal action, Applicant's plea at the change of plea hearing did not "represent an informed choice" and was not "exercised voluntarily, knowingly and intelligently."

---

but also whether the known evidence would lead a reasonable attorney to investigate further").

As per the Supreme Court, in *Blackledge v. Allison*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630 (1977) (*citing, Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223 (1956)), "the critical question," in administering the writ of habeas corpus, is whether the allegations asserted in petitioner's motion, "… when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal."

In *Blackledge,* the Supreme Court affirmed the appellate court's decision to remand the case so that the district court may hold an evidentiary hearing on petitioner's ineffective assistance of counsel claims.  The court determined that petitioner's allegations were not in themselves so vague or conclusory as to warrant dismissal - the petitioner elaborated on his claim with specific factual allegations i.e., the petition indicated what the terms of the promise were, when, where, and by whom the promise had been made and the identity of one witness to its communication. *Id.* at 74.  In reaching its decision, the Supreme Court relied on *Machibroda v. U.S.*, 368 U.S. 487, 82 S.Ct. 510 (1961), wherein the Supreme Court noted

> … that [petitioner's] allegations, if proved, would entitle [petitioner] to relief, and that they raised an issue of fact that could not be resolved simply on the basis of an affidavit from the prosecutor denying the allegations.  Because those allegations 'related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light,' (citation omitted) and were not so 'vague or conclusory' (citation omitted) as to permit summary

33

disposition, the Court ruled that [petitioner] was entitled to the opportunity to substantiate them at an evidentiary hearing.

*Blackledge*, 431 U.S. at 72, and, *Fontaine v. U.S.,* 411 U.S. 213, 93 S.Ct.

1461 (1973), wherein the Supreme Court held that

> Although noting that in collaterally attaching a plea of guilty a prisoner 'may not ordinarily repudiate' statements made to the sentencing judge when the plea was entered, the Court observed that no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it 'uniformly invulnerable to subsequent challenge.' (citation omitted)  Because the record of the plea hearing did not, in view of the allegations made, "'conclusively show that the [petitioner] was entitled to no relief,'" (citation omitted) the Court rules that the [petitioner] should be given an evidentiary hearing.

*Blackledge*, 431 U.S. at 73.

According to the Supreme Court:

> What *Machibroda* and *Fontaine* indisputably teach, however, is that the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable.  ***In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a [petitioner's] representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.***

*Blackledge*, 431 U.S. at 74-5. (Emphasis added.)

Like the petitioner in *Machibroda, Fontaine* and *Blackledge,* Applicant's

allegations, as corroborated two third-party Affiants, are not so vague or

conclusory as to warrant dismissal for that reason alone.  As  discussed *supra,*

34

Applicant has alleged, and Affiants have confirmed, that her plea was induced by former counsels' misrepresentations and misadvise.    Accordingly, Applicant's allegations, when viewed against the record of the plea hearing, are not so palpably incredible, so patently frivolous or false to as to warrant summary dismissal.

As stated in *De La Rosa v. U.S.*, 2012 WL 4466533 *5,

A guilty plea must therefore stand ***unless induced by misrepresentation made to the accused person by*** the court, prosecutor, ***or his own counsel***. *Mabry,* 467 U.S. at 509, *quoting, Brady v. United States*, 397 U.S. at 748. ***If a guilty plea is induced through threats, misrepresentations or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause.*** *Mabry*, 467 U.S. at 509. *See also Santobello v. New York*, 404 U.S. 257 (1971).

(Emphasis added.)   Applicant alleges, and Affiants corroborate, that her plea was induced by the misrepresentations and misleading counsel of Messrs. Egleston and Kubiliun.   Accordingly, Applicant was not "… fully apprised of the consequences of the guilty plea …."[15]   *Id.*   The case law, as applied to the facts of this case, require that an evidentiary hearing be given as the Applicant has provided more

---

[15]    The law is clear that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. *Padilla v. Kentucky,* —— U.S. ——, —— – ——, 130 S.Ct. 1473, 1480–81, 176 L.Ed.2d 284 (2010); *See Lloyd v. McNeil,* 2009 WL 2424576 (S.D.Fla.2009) (defendant has the right to competent advice regarding the choice to accept a plea or go to trial).

*De La Rosa*, 2012 WL 4466533 *7.

than enough corroborated testimony to warrant further investigation with respect to her claims of ineffective assistance of counsel.

### III. A Certificate of Appealability Should Issue to Determine Whether the District Court Erroneously Failed to Consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and Kubiliun's Numerous Violations of Their Ethical and Professional Responsibilities.

Before deciding whether an attorney's tactical or strategic decision in any given case is reasonable, courts must decide that the decision is a tactical or strategic one in the first place. *See Jackson v. Herring*, 42 F. 3d 1350, 1367 (11th Cir. 1995). While "the reasonableness of a strategic choice is a question of law to be decided by the court," *Provenzano v. Singletary*, 148 F. 3d 1327, 1332 (11th Cir. 1998), the issue as to whether an attorney's decisions were tactical or strategic in nature "is an issue of fact." *Jackson*, 42 F.3d at 167.

In order to demonstrate that counsel's performance was deficient, an applicant must demonstrate that the representation fell "below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S.Ct. 13, 16 (2009), *citing Strickland*, 466 U.S. at 686. (internal quotation marks omitted.)  Courts may also refer to "precedent from state and federal courts, state bar canons, the American Bar Association Standards Relating to the Defense Function (App. Draft 1971), and in some instances, ***expert***

36

***testimony*** on the particular conduct at issue." *Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977) (emphasis added); *see also Bobby*, 558 U.S. at 7.[16]

In *Jackson, supra,* the applicant alleged, among many claims, that former counsel rendered ineffective assistance of counsel during the sentencing phase of her trial by failing to investigate potential mitigating evidence. *Id*. at 1362, *citing Strickland*, 466 U.S. at 690-91, this Court held that applicant's former counsel completely failed in their duty to make a reasonable investigation into her personal history to discover the existence of extensive mitigating evidence. *See, id.* at 1366-67. This Court emphasized the difference between decisions that are ultimately left to the discretion of the counsel and actions that counsel are *required and duty-bound* to take; the latter of these are issues of fact, and thus, open to proof via expert testimony. *See id.*

In this case, both the Magistrate Judge and the District Judge failed to undertake the proper threshold inquiry of whether the choices Messrs. Egleston and Kubiliun made were strategic/tactical in nature. (DE 29; DE 36.) In particular, the Magistrate dismissed the expert Affidavits of Douglas A. Berman and Ruben Oliva (DE 29, pps. 23-24.) Contrary to the District Court's ruling, the case law decidedly does not simply state in general terms "whether the petitioner's former

---

[16]    "Restatements of professional standards, we have recognized, can be useful as 'guides' to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place."

counsel rendered ineffective assistance of counsel is a question to be decided by the Court," (DE 29, p. 23.); it makes careful distinction between the issues of law (to be decided by the court and not subject to proof) and issues of fact (to be decided by the fact-finder and subject to proof) as discussed *infra*.

The expert Affidavits of Messrs. Berman and Oliva can assist the Court in determining the professional standards and obligations for criminal defense lawyers in similarly situated cases, for example:

(1) Mr. Berman explains that Messrs. Egleston and Kubiliun "entirely failed to investigate or even understand the full nature and characteristics of [Applicant's] alleged offense conduct," in violation of their ethical and professional responsibilities[17] (DE 27-1 ¶ 6.);

(2) Mr. Berman opines that the complete failure of Messrs. Egleston and Kubiliun to dispute any of the terms of the plea agreement, especially the loss enhancement, was due to "a complete misunderstanding or misapplication of what [Applicant's] actual sentencing exposure was likely to be under properly applicable federal sentencing law and practices for these sorts of fraud cases" (DE 27-1 ¶ 7.);

(3) Mr. Oliva comments that counsel must undertake a duty to examine the discovery provided by the government in criminal cases[18] (DE 27-2 ¶ 19-20);

(4) According to Mr. Oliva the complete failure of Messrs. Egleston and Kubiliun to relate to Applicant her discovery until ***after she was incarcerated*** was "unacceptable and undermines the notion of client

---

[17]    "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem." Model Rules of Prof'l Conduct R. 1.1 cmt. (1983).

[18]    *See,* n. 4.

participation in the adjudicatory process" (DE 27-2 ¶ 26.) (emphasis added); and

(5) Mr. Oliva explains that Messrs. Egleston and Kubiliun had an obligation to review all evidence with the Applicant so that the Applicant understands and appreciates the significance of the plea "[h]owever long or arduous this process may be." (DE 27-2 ¶ 29-30.)

Accordingly, the District Court erred in not giving due consideration and attention to the expert Affidavits of both Messrs. Berman and Oliva.    Both Affidavits shed light on both the professional duties lawyers are bound by and the prevailing standards of practice in similarly situated cases.

**IV.    *A Certificate of Appealability Should Issue to Determine Whether the District Court Erroneously Concluded that Messrs. Egleston and Kubiliun's Associate's Personal and Professional Relationship with Ms. Pampin, a Co-defendant in Applicant's Underlying Criminal Case, Did Not Create an Actual Conflict of Interest that Negatively Affected Applicant's Representation.***

In order to demonstrate ineffective assistance of counsel on the basis that counsel was burdened by a conflict of interest, an applicant must demonstrate that counsel was burdened by an "actual" conflict of interest that created an adverse effect. *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001). To prove that an actual conflict of interest exists, a petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action" by pointing "to specific instances in the record." *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987). A conflict of interest can arise from an attorney's relationship with several people, including

39

non-client third parties,[19] and can arise before the existence of any representation commences.[20]

A petitioner must demonstrate the following in order to show that the actual conflict had an adverse effect on the representation: "(a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343.

However, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 1719 (1980). Once an actual conflict of interest has been found, the court must then "impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994).

In this case, the record clearly shows an actual conflict of interest between Messrs. Egleston and Kubiliun, Ms. Collado-Hudak and Ms. Pampin on the one hand, and the Applicant on the other. The record clearly establishes that Messrs.

---

[19]     "[A] lawyer must not represent a client if […] there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client ***or a third person*** or by a personal interest of a lawyer." R. Regulating Fla. Bar 4-1.7. (Emphasis added.)

[20]     "An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined." R. Regulating Fla. Bar 4-1.7, cmt.

Egleston and Kubiliun's associate, Ms. Collado-Hudak, had a close personal relationship that had, at that point, lasted for several years. *U.S. v. Gonzalez, et al.*, Case No. 12-20291-Cr-Altonaga, (DE 434, pps. 4-5.) On March 22, 2013, Ms. Collado-Hudak wrote a letter to the District Court on behalf of Ms. Pampin for the latter's sentencing hearing in Applicant's underlying criminal case. (*Id*. at pps. 4-5.) In this letter, Ms. Collado-Hudak describes Ms. Pampin, a co-defendant in the Applicant's underlying criminal case, as "a sister" and that they "have been friends since [their] early high-school days," (*Id.* at p. 4), how she "could write pages and pages about [Ms.] Pampin and all of the wonderful memories [she has] of her," (*Id.* at p. 5.) and "how heartbroken [she is] at the prospect of her not being around to share the good and not-so-good times." (*Id.* at p. 4.)

But the relationship between Ms. Collado-Hudak and Ms. Pampin does not stop at personal friendship; the record also clearly demonstrates that Ms. Collado-Hudak provided legal advice and counsel to Ms. Pampin, unbeknownst to the Applicant and the third party witnesses in this case. (*Id.* at pps. 5; DE 4-1 ¶ 21-23; DE 4-2 ¶ 16-17; DE 32-1 ¶ 16-17; DE 4-3 ¶ 9.) In the letter referenced *supra*, Ms. Collado-Hudak states that when the underlying criminal investigation began, "we discussed her employment and her part in the offense conduct. It wasn't until the entire picture and her part in it was explained to her that she realized the depth and true significance of her actions." *U.S. v. Gonzalez, et al.*, Case No. 12-20291-Cr-

41

Altonaga, (DE 434, p. 5.) As the letter clearly shows, Ms. Collado-Hudak and Ms. Pampin discussed the legal ramifications of the underlying criminal case. Ms. Collado-Hudak assisted Ms. Pampin in "fully [understanding] how her actions played a part in the offense conduct" in a manner that was quintessential of an attorney-client relationship. (*Id.* at p. 5.) Although Ms. Collado-Hudak mentioned to the Applicant and present third party witnesses that she could not represent Applicant due to her relationship with Ms. Pampin, Ms. Collado-Hudak remained in the room during the initial meeting where she became privy to critical and confidential information concerning Applicant's case.  (DE 4-1 ¶ 24, 26; DE 4-2 ¶ 21; DE 32-1 ¶ 21; DE 4-3 ¶ 7-8.) Critically, neither Ms. Collado-Hudak nor Messrs. Egleston and Kubiliun ever discussed any potential conflict of interest issues regarding that relationship between Ms. Collado-Hudak and Ms, Pampin, thus undermining Applicant's ability to give informed consent to the conflict. (DE 4-2 ¶ 21; DE 32-1 ¶ 21; DE 4-3 ¶ 7.)

Furthermore, this conflict of interest is imputable to Messrs. Egleston and Kubiliun's law firm, Manos, Alwine, & Kubiliun, P.L.  *See Ross*, 33 F.3d at 1523. Accordingly, Manos, Alwine, & Kubiliun, P.L and Messrs. Egleston and Kubiliun were under a professional and ethical duty to remove themselves from representation of Applicant in the underlying criminal case.  *Id.*  Therefore, the record is replete with specific references to the existence of an actual conflict of

42

interest that burdened Messrs. Egleston and Kubiliun's representation of Applicant. *See Smith*, 815 F.2d at 1404.

## CONCLUSION

Applicant respectfully requests that this Court issue a Certificate of Appealability on the following issues:

1. Whether the District Court erroneously failed to conduct an evidentiary hearing on Applicant's §2255 Motion where Applicant's allegations of ineffective assistance of counsel are corroborated by two third-party Affidavits.

2. Whether the District Court erroneously held that the identified acts and omissions by Messrs. Egleston and Kubiliun did not constitute ineffective assistance of counsel.

3. Whether the District Court erroneously failed to consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and Kubiliun's various violations of their ethical and professional responsibilities.

4. Whether the District Court erroneously concluded that Messrs. Egleston and Kubiliun's associate's personal and professional relationship with Ms. Pampin, a co-defendant in Applicant's underlying criminal case, did not create an actual conflict of interest that negatively affected Applicant's representation.

Respectfully submitted,

/s/ Benson Weintraub
**BENSON WEINTRAUB, ESQ.**
FL. Bar No. 486418
Law Office of Benson Weintraub
837 Victoria Park Rd. #4
Ft. Lauderdale, FL. 33304
Email: weintraub.benson@gmail.com
Telephone: 954.464.1314

43

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B)  because this brief contains  10,816  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007, in Times New Roman 14-point font.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via ECF on this 15th  day of September, 2014 on all counsel or parties of record.

<u>/s/ Benson Weintraub</u>
**BENSON WEINTRAUB, ESQ.**

44