UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

# CASE NO.: 14-14140-C

ALINA FEAS,

    Applicant/Petitioner

v.

UNITES STATES OF AMERICA,

    Respondent.

Request for Issuance of a Certificate of Appealability from the United States District Court for the Southern District of Florida.

Case No. 14-20564-Cv-Altonaga

## <u>MOTION FOR RECONSIDERATION</u>

BENSON WEINTRAUB, ESQ.
FL. Bar No. 486418
Law Office of Benson Weintraub
837 Victoria Park Rd. #4
Ft. Lauderdale, FL. 33304
Email: weintraub.benson@gmail.com
Telephone: 954.464.1314

## APPLICANT'S CERTIFICATE OF INTERESTED PERSONS

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, Applicant, Alina Feas, certifies that the following represents a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Collado-Hudak, Adriana, associate attorney at prior law firm representing Applicant/Petitioner.

- Egleston, Scott D., prior counsel to Applicant/Petitioner.

- Feas, Alina, Applicant/Petitioner.

- Kubiliun, David M., prior counsel to Applicant/Petitioner.

- Law Office of Benson Weintraub, law firm representing Applicant/Petitioner.

- Manos, Alwine, & Kubiliun, P.L., prior law firm representing Applicant/Petitioner.

- McNamara, Anne, attorney for the United States of America.

- Pryor, Jr., William J., Circuit Judge for the United States Court of Appeals for the Eleventh Circuit.

- Weintraub, Benson B., attorney for Applicant/Petitioner.

- **MOTION FOR RECONSIDERATION**

Applicant, ALINA FEAS, by and through her undersigned counsel and pursuant to 11th Cir. R 22-1(c) and 27-2, hereby files her Motion for Reconsideration of the Court's Order denying Applicant's Request for Issuance of a Certificate of Appealability.  In support thereof Applicant states:

### INTRODUCTION

On August 12, 2014, the District Court denied Applicant's Motion to Vacate (DE No. 36) erroneously concluding that "[t]here is no need for an evidentiary hearing" as Applicant's allegations in her Motion and contemporaneously filed Affidavits – corroborating Applicant's allegations – "… do not rise to the level of 'credible documentary evidence which indicates a right to relief."  (DE No. 36, pp. 8-9)  Thereafter, Applicant filed a timely Request for Issuance of a Certificate of Appealability wherein Applicant respectfully requested that this Court issue a certificate of appealability on the following issues:

1. Whether the District Court erroneously held that the identified acts and omissions by Messrs. Egleston and Kubiliun did not constitute ineffective assistance of counsel.

2. Whether the District Court erroneously failed to conduct an evidentiary hearing on Applicant's §2255 Motion where Applicant's allegations of ineffective assistance of counsel are corroborated by two third-party Affidavits.

3. Whether the District Court erroneously failed to consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and

1

Kubiliun's various violations of their ethical and professional responsibilities.

4. Whether the District Court erroneously concluded that Messrs. Egleston and Kubiliun's associate's personal and professional relationship with Ms. Pampin, a co-defendant in Applicant's criminal case, did not create an actual conflict of interest that negatively affected Applicant's representation.

On January 26, 2015 this Court entered an Order denying her Request for Issuance of a Certificate of Appealability concluding that "… she has failed to make a substantial showing of the denial of a constitutional right."

## ARGUMENT

Issuance of a certificate of appealability requires that the Court find that Applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  *See, Miller-El v. Cockrell,* 537 U.S. 322, 335-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000); *see also, Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).  As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

*Slack*, 529 U.S. at 483-84, *quoting Barefoot*, 463 U.S. at 893 n.4.  The United States Supreme Court clarified the requisite standard for the granting of certificates

in *Miller-El* stating:

> [W]e do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. … As we stated in *Slack*, '[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 (c) is straightforward; the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'

529 U.S. at 484. The Court further emphasized that this is a "threshold inquiry" into an applicant's claims and that it "does not require a showing that the appeal will succeed." *Id*. 336-37. An issue is clearly debatable among jurist:

1. Where the Supreme Court has granted certiorari to review a "similar" question in another case, the issue is clearly debatable among jurists of reason, *e.g., Ford v. Strickland*, 696 F.2d 804, 807 (11th Cir. 1983).

2. Where another circuit has resolved this same issue favorably to an applicant in another case, the issue is debatable among jurists of reason, *Lozada v. Deeds*, 498 U.S. 430, 431-32 (1991).

3. Where this Circuit, or another district court in the same district, or elsewhere, has granted a certificate of appealability in another case on the same issue, the debatable standard is met, *e.g., Ford,* 734 F.2d at 543; *Wainwright v. Ford,* 467 U.S. 1220 (1984).

4. Where the proper adjudication of the claim may require additional evidentiary development, *Smith v. Wainwright*, 737 F.2d 1036, 1037 (11th Cir. 1984); *Ford*, 734 F.2d at 543 (11th Cir.); *Wainwright,* 467 U.S. 1220.

5. Where there exists reasonable doubt as to whether the district court fully and fairly adjudicated the matter, given the actions of the district court or the possible incompetence of applicant's counsel, the debatable standard is met, *Brown v. Blackburn*, 625 F.2d 35 (5th Cir. 1980).

3

The Applicant contends that the required standard is met so that the issues presented are adequate to warrant further proceedings, *Miller-El,* 537 U.S. 322, as follows:

A. *The Issues Raised by Applicant's Ineffective Assistance of Counsel Claim are Clearly Debatable Among Jurist of Reason.*

The Constitution guarantees every defendant in a criminal case the right to counsel. U.S. Const. Amend. VI. The Supreme Court has long held that the Sixth Amendment requires more than the mere presence of counsel – it requires the *effective* assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55 (1932). Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, a defendant must show both that counsel's performance was deficient and that such deficient performance prejudiced the defendant. *Id.* at 687. Counsel's performance is "deficient" when it falls below an "objective standard of reasonableness." *Id*. at 687-88. Prejudice results when there is at least "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. The Supreme Court clarified counsel's duty to conduct reasonable investigations in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574 (1986).  In discussing

4

counsel's failure in relation to *Strickland*'s deficient performance prong, the Supreme Court stated that:

> Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery. Such a complete lack of pretrial preparation puts at risk both the defendant's right to an 'ample opportunity to meet the case of the prosecution,' and the reliability of the adversarial process.

*Id*. at 385. Stressing the importance of factual investigation, the Supreme Court noted that "that [adversarial] testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies." *Id*. at 384.

Indeed, this Court has repeatedly emphasized the duty that counsel has to become familiar with the facts of his or her client's case. *See, Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983) ("Counsel must be familiar with the facts and the law in order to advise the defendant of the options available."); *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974) ("[A] lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level [of quality to be considered effective counsel]."); *Calloway v. Powell*, 393 F.2d 886, 888 (5th Cir. 1968) ("Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it if necessary in order meaningfully to advise the accused of his options.")

Under this standard, Messrs. Egleston and Kubiliun plainly rendered

constitutionally deficient representation to Applicant. From their very first meeting with Applicant, Messrs. Egleston and Kubiliun were put on notice of the possibility of forged signatures purported to be by the Applicant on the allegedly "… falsified, fabricated and altered medical records …" that formed the basis of the Superseding Indictment (DE 22-1) and Government's case against the Applicant.  (DE 4-2, ¶ 23 & DE 32-1, ¶ 23.)  Messrs. Egleston and Kubiliun made absolutely no effort to further investigate the issue of Applicant's forged signatures. *Id*.

Any decision not to pursue investigation on a factual issue must be made reasonably. *See, Strickland*, 466 U.S. at 691. In this case, there was no basis in reason to fail to undertake *any* investigation into the facts and/or evidence underlying Applicant's case. Messrs. Egleston and Kubiliun had a duty to review the evidence and investigate potential defenses before advising Applicant regarding her options, as discussed *supra*. (DE 4-1 ¶ 44-46; DE 32-1 ¶ 29; DE 4-3 ¶ 13 & 15.) Yet, Messrs. Egleston and Kubiliun were pressuring Applicant to plead guilty *before she was even arrested* and without having examined any of the alleged evidence in her case. (DE 4-1 ¶ 57-58; DE 32-1 ¶ 30; DE 4-3 ¶ 15.)  Nor did they discuss any of the alleged discovery in her case to enable her to make an informed decision regarding how to proceed.

As a result, there was no meaningful advice given to Applicant regarding her

options; the so-called "best" option Messrs. Egleston and Kubiliun presented, *before Applicant's arrest and only two weeks after their initial meeting with the Applicant* and without having reviewed any of the alleged evidence, was to plead guilty. (DE 4-1 ¶ 57-60; DE 32-1 ¶ 30; DE 4-3 ¶ 14.)  See, *Adams v. Bertrand*, 453 F. 3d 428 (7th Cir. 2006) (counsel was ineffective because he "committed to a predetermined strategy without a reasonable investigation"); *Reynoso v. Giurbino*, 462 F. 3d 1099 (9th Cir. 2006) ("Although trial counsel is typically afforded leeway in making tactical decisions regarding trial strategy, counsel cannot be said to have made a tactical decision without first procuring the information necessary to make such a decision"); *see also, Brown v. Smith*, 551 F. 3d 424 (6th Cir. 2008) (counsel was ineffective in failing to investigate).[1]

Messrs. Kubiliun and Egleston's complete lack of factual investigation before advising Applicant of her options rendered her unable to meet the prosecution's case and totally undermined the reliability of the adversary process.

---

[1]    *See, Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) ("[t]he Supreme Court has explained that decisions that are based on mistaken beliefs certainly are neither strategic nor tactical"). This Court further elaborated on the meaning of strategic decisions by saying that "strategic decisions are one that, among other things, involve a weighing of competing positive and negative consequences that may flow to the defendant from a particular choice." *Green*, 595 F.3d at 1251. In this case, there were certainly no negative consequences that would have flowed to Applicant in investigating the possibility of forged signatures or *any* of the Government's alleged evidence.  *See also, Gersten v. Senkowski*, 426 F. 3d 588 (2nd Cir. 2005) ("[d]efense counsel may not fail to conduct an investigation and then rely on the resulting ignorance to excuse his failure to explore a strategy that would have yielded exculpatory evidence").

*Kimmelman*, 477 U.S. at 385. Even in the context of guilty pleas, counsel must provide constitutionally effective counsel in order to ensure the validity of the guilty plea, and therefore, the reliability of the proceedings. *See Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976) ("[i]f the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot have been made knowingly and voluntarily because it would not represent an informed waiver of the defendant's constitutional rights.") Thus, due to their complete lack of factual investigation, especially before advising Applicant to plead guilty, Messrs. Egleston and Kubiliun rendered counsel far below the constitutionally mandated minimum. As a result, Applicant's plea of guilty was not knowing and voluntary. Given Applicant's numerous, specific, detailed, and heavily corroborated assertions of ineffective assistance of counsel amply supported by precedent, as discussed *supra*, jurists of reason would debate the District Court's denial of the Applicant's § 2255 motion.

Secondly, Messrs. Egleston and Kubiliun rendered ineffective assistance of counsel in failing to adequately research the law applicable to Applicant's case and in making several affirmative misrepresentations regarding the law. This Court has also held that "[d]efense counsel has a constitutional duty to know or learn about the relevant law and evaluate its application to his or her client." *Finch v. Vaughn*, 67       F.3d       909,       916       (11th       Cir.       1995).

> When the misadvice of the lawyer is so gross as to amount to a denial
> of the constitutional right to the effective assistance of counsel,
> leading the defendant to enter an improvident plea, striking the
> sentence and permitting a withdrawal of the plea seems only a
> necessary consequence of the deprivation of the right to counsel.

*Holmes v. U.S.*, 876 F.2d 1545, 1552 (11th Cir. 1989), (citing *Strader v. Garrison*, 611 F.2d 61, 64 (4th Cir. 1979)). Such was the case here. Ms. Collado-Hudak grossly misadvised Applicant and the third party witnesses that the Government did not have to disclose any discovery in a federal criminal case.[2] (DE 4-2 ¶ 22; DE 32-1 ¶ 22; DE 4-3 ¶ 10.) Such gross misadvice led Applicant to enter a plea of guilty without having seen any of the alleged evidence against her. As such, counsel's misrepresentations regarding the Government's discovery obligations constituted deficient performance.

In *Missouri v. Frye*, --- U.S. ---, 132 S.Ct. 1399 (2012), the Supreme Court held that "criminal defendants require effective counsel during plea negotiations."

---

[2]    Federal Rule of Criminal Procedure 16 outlines the several discovery obligations that the government is held to. For example, on request by the defense, the Government must permit the defense to inspect and copy/photograph all items within its possession, custody and control if the items are intended to be used in the Government's case-in-chief, are "material to preparing the defense," or are obtained from the defendant. Fed. R. Crim. P. 16(a)(1)(E). Indeed, in the instance case, the Government filed its Response to the Standing Discovery Order (DE 351) and on April 5, 2013, the Government filed its Second Response to the Standing Discovery Order with the Court, identifying, among other things, **over 300 boxes of alleged documents/evidence the Government had in its possession**. None of this alleged evidence was reviewed by Messrs. Egleston and Kubiliun, certainly not in the two weeks before they pressured Applicant to plead guilty.

*Id*. at 1407-08. In *Missouri* the Supreme Court implicitly held that at least *some* effort to negotiate must be made. In violation of this constitutional principle, Messrs. Egleston and Kubiliun repeatedly misrepresented to Applicant and present third-party witnesses that there was nothing that could be done about the lopsided terms and inaccurate information in the plea agreement and that "that's the way it is." (DE 4-1 ¶ 65; DE 32-1 ¶ 31; DE 4-3 ¶ 14-15.)  Accordingly, by their own admission Messrs. Egleston and Kubiliun made no effort to negotiate its terms or to even present their objections to the Government.

Messrs. Egleston and Kubiliun also failed in their constitutionally mandated duties as counsel when they failed to prepare any of their witnesses for sentencing. They made no effort to contact most of the potential witnesses for sentencing despite being provided a list of people who wished to testify at sentencing on Applicant's behalf. (DE 4-3 ¶ 21.) In fact, their only preparation was to tell one witness to "speak from the heart" with no other discussion about the substance of that person's testimony. (DE 4-2 ¶ 36; DE 32-1 ¶ 36.) Given the importance of Applicant's significant mitigating personal background and because no reasonable attorney would have put in *no effort* in preparing his or her witnesses for sentencing, Messrs. Egleston and Kubiliun's performance fell way below the objective standard of reasonableness enunciated in *Strickland*. (DE 27-1 ¶ 7 & 10) (mentioning the importance of Applicant's personal history and characteristics as it

10

relates to sentencing.)

As the Supreme Court has granted certiorari review in similar cases, *see supra,* the issues raised by Applicant as to ineffective assistance of counsel are clearly debatable among jurists of reason, *see, Ford*, 696 F.2d at 807. Furthermore, other circuits have resolved the same issues, present in this case, favorably the debatable standard is also met.  *Lozada,* 498 U.S. at 431-32. Accordingly, a certificate of appealability should issue as to whether the District Court erroneously held that the above-identified acts and omissions by Messrs. Egleston and Kubiliun did not constitute ineffective assistance of counsel.

B. *Reasonable Jurist Would Agree that Applicant's Claims Cannot be Resolved Without an Evidentiary Hearing.*

An applicant who brings forth his or her ineffective assistance claim with "specific factual allegations supported by the affidavit of a reliable third person" is entitled to an evidentiary hearing. *U.S. v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) (citing *Blackledge*, 431 U.S. at 63); *see also U.S. v. McCord*, 618 F.2d 389, 394 (5th Cir. 1980), *Vandenades v. U.S.*, 523 F.2d 1220, 1223 (5th Cir. 1975).[3] Accordingly, a proper adjudication of a claim may require additional evidentiary development. *Smith,* 737 F.2d 1036.

In *McCord*, the petitioner appealed and the Fifth Circuit held that

---

[3]    The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), *en banc*, adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

petitioner's allegations of an unkept plea bargain, although contradicted by his testimony at the sentencing hearing, were not without support, since an affidavit filed by a third party, with "… firsthand knowledge of the plea bargain, when considered in light of petitioner's motion, the files, and the record, raised a sufficient inference of an unkept plea bargain to warrant an evidentiary hearing under the express provisions of § 2255." *Id.* at 393. The Fifth Circuit stated:

> The Supreme Court has refused to apply a per se rule rendering guilty pleas invulnerable to subsequent challenge even when a § 2255 petitioner repudiates statements made to the sentencing judge at the time the plea was entered. *Fontaine v. U.S.*, 411 U.S. 213 (1973); *Vandenades v. U.S.*, 523 F.2d 1220 (5th Cir. 1975)
> …
> As the Court stated in *Blackledge*: In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstandings, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment. 431 U.S. at 75. See *Fontaine v. U.S.* 411 U.S. at 214-15; *Machibroda v. U.S.* 368 AT 491-96; *U.S. v. Nuckols*, 606 F.2d 566 (5th Cir. 1979); *Dungan v. U.S.*, 521 F.2d 231 (5th Cir. 1975).

*Id.* at 392-93. While the appellate court advanced no opinion as to the merits of petitioner's motion, it held "that [petitioner] is entitled to an opportunity to present further testimonial or documentary evidence in support of his contentions." *Id.*

In this case, Applicant's factual allegations are backed by the Affidavits of two other witnesses, Jerry Feas, Esq. and Lissette Gonzalez, Psy. D., who were present throughout most of Applicant's conversations with her prior counsel,

12

Messrs. Kubiliun and Egleston.  As discussed below, these two Affidavits do not simply state "speculative and inconcrete claims," *Dickinson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982); they provide several poignant examples where Messrs. Egleston and Kubiliun were plainly derelict in their Sixth Amendment duties at nearly every phase of the case.  The Affidavits recite, with specificity, repeated instances of constitutionally defective representation. For example,

(1) Messrs. Egleston and Kubiliun failed to provide Applicant with sufficient information to participate intelligently in the case, to keep Applicant informed about the status of the case and to promptly comply with reasonable requests for information (DE. 4-2, ¶ 34, 32-1, ¶ 34 & 4-3 ¶15 & 22);

(2) Messrs. Egleston and Kubiliun's associate, Mrs. Collado-Hudak, told Applicant "… that the [G]overnment was **not** required to disclose the discovery in a federal case"[4] (DE 4-2, ¶ 22, 32-1, ¶ 22 & 4-3 ¶10);

(3) Messrs. Egleston and Kubiliun failed to disclose to Applicant any discovery documents that were either turned over to them by the Government or made available to them by the Government for review (DE 32-1, ¶ 29 & 4-3, ¶12);

(4) Messrs. Egleston and Kubiliun failed to follow up on hiring a handwriting expert to investigate the possibility of forged signatures (DE 4-2, ¶ 23 & 32-1, ¶ 23);

(5) Mr. Egleston misrepresented to Applicant that there was nothing that could be done about the inaccurate information contained in the plea agreement or

---

[4]    As evidenced by the Docket Sheet in *U.S. v. Feas, et al.*, Case No. 12-20291-Cr-Altonaga, on February 14, 2013 the Government filed its Response to the Standing Discovery Order (DE 351) and on April 5, 2013, the Government filed its Second Response to the Standing Discovery Order with the Court identifying, among other things, **over 300 boxes of alleged documents/evidence the Government had in its possession**. Former counsel plainly did not review or even attempt to review such voluminous records. *See,* n. 2.

(6) the lopsided terms of the plea agreement (DE 4-2, ¶ 14, 32-1 ¶ 14 & 31 & 4-3, ¶ 14 & 15);

(7) Mr. Egleston misrepresented to Applicant that there was nothing that could be done about the inaccurate information contained in the PSI (DE 2 ¶ 20);

(8) Messrs. Egleston and Kubiliun failed to retain a private investigator to explore the facts surrounding the case and develop possible defenses (DE 4-2, ¶ 23, 32-1, ¶ 23 & 4-3, ¶16); and

(9) Mr. Egleston failed to prepare witnesses before the sentencing hearing (DE 4-2, ¶ 36, 32-1, ¶ 36, & 4-3, ¶19).

Thus, the record is replete with numerous corroborated allegations supporting Applicant's Motion.

As discussed *supra*, said Affidavits provide enough corroboration and create more than sufficient *bona fide* factual disputes to warrant, at a minimum, an evidentiary hearing. Accordingly, given the sheer amount of corroborated allegations of constitutionally defective counsel, Applicant is entitled to an evidentiary hearing on her § 2255 motion. *See U.S. v. McCord*, 618 F.2d 389 (5th Cir. 1980); *Dugan v. U.S.*, 521 F.2d 231, 233 (5th Cir. 1975) ("[w]hen the petitioner presents affidavits from third parties, the danger of repeated hearings no longer exists."); *Vandenades v. U.S.*, 523 F.2d 1220, 1223 (5th Cir. 1975) ("when the record discloses other credible documentary evidence which indicates a right to relief, an evidentiary hearing may be necessary."); *U.S. v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) ("where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to an evidentiary

14

hearing on his allegations.")

Like in *Smith*, 737 F.2d 1036, in the present case several strong arguments can be made that one or more of the Applicant's claims cannot be resolved without an evidentiary hearing. Furthermore, when another Circuit (i.e., the Fifth Circuit in *McCord*) has resolved the same issue, present in this case, favorably (i.e., the need for an evidentiary hearing) the debatable standard is met. *Lozada*, 498 U.S. at 431-32. Accordingly, a certificate of appealablity should issue to determine whether the District Court erroneously failed to conduct an evidentiary hearing on Applicant's §2255 Motion where Applicant's allegations of ineffective assistance of counsel are corroborated by two third-party Affidavits.

### C. Reasonable Jurists Should Agree that the District Court Failed to Consider the Expert Opinions of Messrs. Berman and Oliva.

In evaluating ineffective assistance of counsel claims, a court must decide whether an attorney's action is strategic or tactical in nature before discussing the reasonableness of that attorney's action. *See Jackson v. Herring*, 42 F.3d 1350, 1367 (11th Cir. 1995). Such a decision is one of fact, and is therefore, open to comment via expert testimony. *See id*. at 1366-67.[5]

---

[5]    At least one Court of Appeals has held that expert testimony can be useful in establishing *Strickland*'s objective standard of reasonableness. *See Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977) (courts may refer to "precedent from state and federal courts, state bar canons, the American Bar Association Standards Relating to the Defense Function (App. Draft 1971), and in some instances, expert testimony on the particular conduct at issue.")

In this instant case, Applicant filed the expert Affidavits of Douglas A. Berman and Ruben Oliva (DE 27-1; DE 27-2) in support of her arguments that Messrs. Kubiliun and Egleston were derelict in their constitutional duties. Both affidavits were denied by the Magistrate and the District Court in contravention of this Court's precedent. Among the numerous violations of professional and ethical obligations by Messrs. Kubiliun and Egleston alleged by Berman and Oliva, they stated the following:

(1) Mr. Berman explains that Messrs. Egleston and Kubiliun "entirely failed to investigate or even understand the full nature and characteristics of [Applicant's] alleged offense conduct," in violation of their ethical and professional responsibilities (DE 27-1 ¶ 6.);

(2) Mr. Berman opines that the complete failure of Messrs. Egleston and Kubiliun to dispute any of the terms of the plea agreement, especially the loss enhancement, was due to "a complete misunderstanding or misapplication of what [Applicant's] actual sentencing exposure was likely to be under properly applicable federal sentencing law and practices for these sorts of fraud cases" (DE 27-1 ¶ 7.);

(3) Mr. Oliva comments that counsel must undertake a duty to examine the discovery provided by the government in criminal cases (DE 27-2 ¶ 19-20);

(4) According to Mr. Oliva the complete failure of Messrs. Egleston and Kubiliun to relate to Applicant her discovery until ***after she was incarcerated*** was "unacceptable and undermines the notion of client participation in the adjudicatory process" (DE 27-2 ¶ 26.) (emphasis added); and

(5) Mr. Oliva explains that Messrs. Egleston and Kubiliun had an obligation to review all evidence with the Applicant so that the Applicant understands and appreciates the significance of the plea "[h]owever long or arduous this process may be." (DE 27-2 ¶ 29-30.)

Both affidavits clearly demonstrate the professional obligations that bind counsel and the prevailing professional norms governing similarly situated cases. Given the importance of expert testimony in establishing the duties that counsel must undertake in representation, reasonable jurists could disagree as to the District Court's resolution of this claim. *See, Brown,* 625 F.2d 35.

> ### D. The Issues Raised by Applicant's Conflict of Interest Claim are Clearly Debatable Among Jurist of Reason.

To prevail under a conflict of interest theory of ineffective assistance of counsel, an applicant must demonstrate both that an actual conflict of interest burdened counsel and that this actual conflict had an adverse effect on the representation. *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001). Typically, an applicant must show: "(a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Id*. at 1343. However, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 1719 (1980). Actual conflict of interest must be imputed to that attorney's firm and the firm must be disqualified from representation. *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994).

In this case, the record is replete with references to an actual conflict of

17

interest flowing from Ms. Collado-Hudak and Ms. Pampin's close personal friendship. On March 22, 2013, Ms. Collado-Hudak wrote a letter to the District Court on Ms. Pampin's behalf for sentencing. (DE 434, pps. 4-5.) Ms. Collado-Hudak refers to Ms. Pampin as "a sister" and said that they "have been friends since [their] early high-school days." (*Id*. at p. 4.) Ms. Collado-Hudak elaborated on the emotional toll Ms. Pampin's incarceration would have on her when she said "how heartbroken [she is] at the prospect of her not being around to share the good and not-so-good times." (*Id*. at p. 4.) She also explicitly mentioned having *provided legal advice* to Ms. Pampin: "we discussed her employment and her part in the offense conduct. It wasn't until the entire picture and her part in it was explained to her that she realized the depth and true significance of her actions." (*Id*. at p. 5.) At no point during their representation of Applicant did any of the firm's attorneys, including Ms. Collado-Hudak, Mr. Kubiliun, and Mr. Egleston, discuss conflict of interest issues with Applicant regarding Ms. Collado-Hudak's close friendship with one of her own co-defendants. (DE 4-2 ¶ 21; DE 32-1 ¶ 21; DE 4-3 ¶ 7.) Because of the numerous, specific, and corroborated allegations concerning the existence of a conflict of interest between Messrs. Kubiliun and Egleston's law firm and Applicant, reasonable jurists could disagree as to the District Court's resolution of this claim.

18

## CONCLUSION

The Applicant has shown, in its Request for Certificate of Appealability, and has further shown herein, "a substantial showing of the denial of a constitutional right" providing a valid basis for the granting a certificate of appealability on the following issues:

1. Whether the District Court erroneously held that the identified acts and omissions by Messrs. Egleston and Kubiliun did not constitute ineffective assistance of counsel.

2. Whether the District Court erroneously failed to conduct an evidentiary hearing on Applicant's §2255 Motion where Applicant's allegations of ineffective assistance of counsel are corroborated by two third-party Affidavits.

3. Whether the District Court erroneously failed to consider the Expert Opinions of Messrs. Berman and Oliva as to Messrs. Egleston and Kubiliun's various violations of their ethical and professional responsibilities.

4. Whether the District Court erroneously concluded that Messrs. Egleston and Kubiliun's associate's personal and professional relationship with Ms. Pampin, a co-defendant in Applicant's criminal case, did not create an actual conflict of interest that negatively affected Applicant's representation.

Respectfully submitted,

/s/ Benson Weintraub
**BENSON WEINTRAUB, ESQ.**
FL. Bar No. 486418
Law Office of Benson Weintraub
837 Victoria Park Rd. #4
Ft. Lauderdale, FL. 33304
Email: weintraub.benson@gmail.com
Telephone: 954.464.1314

19

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via

ECF on this 16th  day of February, 2015 on all counsel or parties of record.


/s/ Benson Weintraub
**BENSON WEINTRAUB, ESQ.**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 14-14140-C

DR. ALINA FEAS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

ORDER:

Dr. Alina Feas moves for a certificate of appealability in order to appeal the denial of her motion to vacate sentence, filed pursuant to 28 U.S.C. § 2255. Her motion is DENIED because she has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

/s/ William H. Pryor Jr.
UNITED STATES CIRCUIT JUDGE